Thomas Alvord, WSBA #61943
The HQ Firm, P.C.
450 Alaskan Way S Suite 200 #1823
Seattle, WA 98104
Telephone: (385) 440-4127
Email: thomas@thehqfirm.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

| | |
|---|---|
| Heather Miller<br><br>Plaintiff,<br>v.<br><br>Davison Design & Development, Inc.<br><br>Defendant. | Case No.: 2:25-cv-459<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

## INTRODUCTION

1. Heather Miller brings this lawsuit against Davison Design & Development, Inc. (Davison) for violations of the Commercial Electronic Mail Act (CEMA), RCW 19.190.060.

2. CEMA prohibits companies from sending commercial text messages to Washington residents without consent.

3. Miller is a Washington resident. She received two commercial text messages from Davison earlier this year. She never gave permission for Davison to send these messages.

4. Davison's unsolicited spam was intrusive and annoying to Miller.

5. As the Ninth Circuit has noted, "Being deluged with 'spam' . . . text messages is the bane of modern life." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022).

6. To hold Davison accountable for its illegal practices, Miller brings this action individually and on behalf of a putative class of Washington residents similarly situated.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a class action, the aggregate amount in controversy exceeds $5,000,000, Miller and putative class members are citizens of Washington, and Davison is a citizen of Pennsylvania.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

## PARTIES

9. Miller is a citizen of Washington, residing in Spokane.

10. Davison Design & Development, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania.

## FACTUAL ALLEGATIONS

11. Miller is the sole user of the cell phone number 509-720-3137.

12. This is Miller's only phone number.

13. Miller first began using 509-720-3137 in January 2025, when her phone carrier assigned this number to her.

14. On March 20, 2025, Davison sent two text messages to 509-720-3137 as follows:

i. Hi Jennifer, this is Joanna from Davison. Here's a link to submit your idea: a.davison.com/c35kj

ii. Hi Jennifer, this is Joanna from Davison. Here's a link to submit your idea: a.davison.com/c35kj Reply STOP to unsubscribe. Msg and Data rates may apply.

15. Davison sent both text messages from the short code 81724.

16. Davison sent both text messages at 8:12 a.m. Pacific Time.

17. That same day, Miller responded to 81724 with the message STOP.

18. The hyperlinks in the text messages directed to idea.davison.com. This webpage contains a prefilled webform with the name of Jennifer B****** and a Spokane, WA address.

19. The presence of a prefilled Washington address in the webform demonstrates that Davison purposefully intended to direct its messages to Washington.

20. Miller does not know anyone named Jennifer B******, nor has she ever gone by that name.

21. Davison is a company that provides research and development services for people wanting to bring an idea to market.

22. On the website, above the webform, Davison says, “Let us help with your idea.” Below the webform, in the footer, Davison says, “Davison’s research, development and presentation services are provided for an upfront fee paid by the client and a contingent fee.”

23. The purpose of Davison’s text messages is to get people to submit the webform so Davison can in turn sell its research and development services.

24. Davison charges between $395 to $16,000 for its various services. *See* AMERICAN INVENTOR'S PROTECTION ACT – DAVISON, www.davison.com/legal/aipa (last visited Nov. 12, 2025) (hereinafter Davison AIPA Disclosure).

## LEGAL STANDARD

25. Washington's Commercial Electronic Mail Act provides that "[n]o person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident" unless the recipient has "clearly and affirmatively consented in advance." RCW 19.190.060(1), .070(1)(b).

26. A CEMA violation is actionable under Washington's Consumer Protection Act and establishes both the injury and causation elements of a CPA violation. *See Wright v. Lyft, Inc.*, 189 Wash. 2d 718 (2017).

## CLASS ACTION ALLEGATIONS

27. Pursuant to Federal Rule of Civil Procedure 23(b)(3), Miller brings this action on behalf of herself, and a Class of Washington residents similarly situated.

28. Miller proposes the following Class:

> All Washington residents (1) who are not Davison customers, and (2) Davison texted (3) between November 12, 2021 through the date of class certification.

29. Miller estimates that the Class has thousands of members, making joinder impracticable.

30. Miller estimates that Davison has sent over 10,000 text messages to the Class.[1]

31. At $500 per violation, this is over $5 million in potential damages.

32. Questions of law and fact common to the Class members include whether Davison sent the text messages, whether they constitute commercial text messages, and whether Davison had consent to send the text messages.

33. Miller's claims are typical because they arise out of the same conduct and legal theory: Davison's commercial text messages to Washington residents without consent.

34. Miller is an adequate representative because her interests do not conflict with those of the Class, and she will fairly represent the interests of the Class. Plaintiff's counsel also has no conflict and is experienced in class actions.

35. The questions common to the class predominate over individualized questions.

---

[1] In the last five years, 576,812 consumers have submitted an idea to Davison. *See* Davison AIPA Disclosure. This would be an estimated 461,449 consumers in the last four years, and because Washington residents comprise 2.3% of the U.S. population, this is an estimated 10,613 Washington consumers in the past four years. Further, Davison says it may send up to 3 text messages per week to each phone number it texts. *See* DAVISON - TURNING NEW IDEAS, INVENTIONS, AND PATENTS INTO NEW PRODUCTS, https://idea.davison.com/index.php (last visited Nov. 12, 2025).

36. A class action is superior to individual suits because it saves judicial resources, promotes consistency and efficiency, provides a forum for small claimants, and deters illegal activity. Class members prosecuting separate actions is unlikely because of the time and expense required. Damages are statutory and straightforward. There is no difficulty in managing this case as a class action.

## FIRST CAUSE OF ACTION
## Violations of the Washington Consumer Protection Act
## On Behalf of Miller and the Class

37. Davison violated the Washington Consumer Protection Act, RCW 19.86, by initiating or assisting in the transmission of commercial text messages to Miller and the Class without consent.

38. Miller and the Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. RCW 19.190.060.

39. The court should award attorney's fees and costs. RCW 19.86.090

## RELIEF REQUESTED

40. Miller requests that the Court grant the following relief:

a) Certification of the proposed Class;

b) Appointment of Miller as class representative;

c) Appointment of The HQ Firm, P.C. as counsel for the Class;

d) An award of damages, fees, costs, and interest; and

e) Orders granting such other relief as the Court deems proper.

## JURY DEMAND

41. Miller requests a jury trial as to all claims of the Complaint so triable.

Dated: November 14, 2025

Respectfully Submitted,

/s/ *Thomas Alvord*

Thomas Alvord, WSBA #61943
Attorney for the Plaintiff
The HQ Firm, P.C.
450 Alaskan Way S Suite 200 # 1823
Seattle, WA 98104
Telephone: (385) 440-4127
Email: thomas@thehqfirm.com